IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,            )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )    Criminal Action No. 24-00042 (GBW)
                                     )
JAMES WING,                          )
                                     )
          Defendant.                 )
                                     )
                                     )

## MEMORANDUM OPINION

Shannon T. Hanson, Bryan C. Williamson, UNITED STATES DEPARTMENT OF JUSTICE, Wilmington, DE – attorneys for Plaintiff.

Eleni Kousoulis, David Pugh, FEDERAL PUBLIC DEFENDER'S OFFICE, Wilmington, DE – attorneys for Defendant.

March 28, 2025
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendant James Wing's ("Defendant" or "Wing") Motion to Suppress Evidence ("the Motion to Suppress"). (D.I. 27). Briefing is complete. (D.I. 32; D.I. 34). On March 5, 2025, the Court held a hearing on the Motion to Suppress ("the Hearing"). Following the Hearing, the parties submitted letters to the Court to elaborate on arguments raised during the Hearing. (D.I. 36; D.I. 37 (Defendant's Amended Letter); D.I. 38). The Court has carefully reviewed the parties' filings, the arguments therein, and the evidence presented at the Hearing.[1] For the reasons set forth below, the Court DENIES Defendant's Motion to Suppress.

## I.    BACKGROUND

On December 14, 2023, an employee from an America's Best Wings restaurant called the Wilmington, Delaware Police Department ("WPD") to report that a person was asleep in their restaurant and would not wake up. (D.I. 32 at 2). Specifically, the employee stated:

> I'm from the America's Best Wings Wilmington . . . We closed our store at 11 o' clock. A guy came here, maybe around a half hour ago, and he is sleeping in our store . . . Almost half an hour . . . We try to wake up him, but he didn't wake up. So our store closed at 11 o' clock. Now it's off by ten minutes . . . He is still sleeping in our store. We try but he did not wake up. It's been a long time.

(D.I. 32, Ex. 2 (911 Call Recording)).

In response, WPD dispatched two nearby officers, Addison Simpler ("Officer Simpler") and Michael Rennewanz ("Officer Rennewanz") (together, "the Officers"), to investigate the employee's report. (D.I. 32 at 2). A dispatch operator informed the Officers that there was a "subject possibly sleeping inside the store" and that the "store closed at 2300 hours." (D.I. 32, Ex. 3 (Dispatch Transmission Recording); *see also* D.I. 27 at 2). Upon arriving, the Officers saw Defendant asleep in a corner booth. (D.I. 27 at 2). The Officers approached Defendant and

---

[1]    The transcript from the Hearing is denoted as "Tr." in citations.

called out to him, but Defendant did not wake up.   (Tr. 23:14-22).   Then, Officer Rennewanz "kicked Wing's foot to wake him up," but Defendant still did not respond.   (D.I. 32 at 3).

Upon approaching Defendant closer, Officer Rennewanz observed "the backstrap of a pistol" protruding out from Defendant's open right-front coat pocket.   (Tr. 25:13-17; *see also* D.I. 2, Ex. 4 (Body Camera Footage)).   Officer Rennewanz grabbed the loaded firearm, removed its chambered round and magazine, and placed the firearm and the ammunition on a nearby table. (D.I. 32 at 3).   The Officers then handcuffed Defendant, which woke him up.   (*Id.*). Subsequently, the Officers "frisked" Wing and found several bags of controlled substances in Wing's pockets.[2]   (D.I. 27 at 3; D.I. 32 at 3).   Before leaving the restaurant, Officer Rennewanz remarked, "I thought it was a flashlight, cause I just saw like the backstrap of it, yeah so I was like that's a gun."   (D.I. 34, Ex. 1 at 2:14-2:22 (Body Camera Footage)).   Defendant was then transported to the WPD headquarters.

## II.   **PROCEDURAL POSTURE**

On April 23, 2024, a federal grand jury in the District of Delaware indicted Defendant James Wing ("Defendant" or "Wing") on one count: possession of a firearm by a prohibited person in violation of 18 U.S.C §§ 922(g)(1) and 924(a)(8).   (D.I. 2 (Redacted Indictment)).   On May 2, 2024, Defendant was arrested and was ordered detained pending trial.   (D.I. 7; D.I. 10). Throughout the summer and fall of 2024, Defendant filed several unopposed motions for extension of time to file pre-trial motions.   (D.I. 17; D.I. 19; D.I. 21; D.I. 23; D.I. 25).   The Court granted these motions and ordered continuances.   (D.I. 18; D.I. 20; D.I. 22; D.I. 24; D.I. 26).

---

[2]      Defendant Wing does not currently face federal drug charges.   (D.I. 32 at 3, n. 6). Defendant Wing was indicted only on one count, possession of a firearm by a prohibited person.   (*See* D.I. 2).   Thus, the Court will not address Wing's arguments to suppress the drugs.

Defendant filed the instant Motion to Suppress on January 13, 2025. (D.I. 27). On February 12, 2025, the Government filed a Response Brief. (D.I. 32). On February 26, 2025, Defendant filed a Reply Brief to the Government's Response Brief. (D.I. 34). On March 5, 2025, the Court held an evidentiary hearing on the Motion to Suppress ("the Hearing"). (D.I. 30). After the Hearing, and at the Court's request, on March 10, 2025, and March 13, 2025, the parties filed separate letters to elaborate on concepts discussed at the Hearing. (D.I. 36; D.I. 37 (Defendant's Amended Letter); D.I. 38).

## III.    LEGAL STANDARD

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend IV. The "ultimate touchstone" of the Fourth Amendment is reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Any evidence obtained from an unreasonable search or seizure must be suppressed, unless an exception applies. *See Mapp v. Ohio*, 367 U.S. 643, 648-49 (1961) (discussing the justification for suppression of evidence). "Generally, for a search or seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based upon probable cause." *United States v. Bey*, 911 F.3d 139, 144-45 (3d Cir. 2018). In contrast, "[w]arrantless searches and seizures are presumptively unreasonable unless the Government satisfies its burden of establishing that one of the exceptions to the warrant requirement applies." *Id.* at 145.

One of the exceptions to the warrant requirement is "the long-established rule that a warrantless search may be conducted incident to a lawful arrest." *Birchfield v. North Dakota*, 579 U.S. 438, 457 (2016). An arrest is lawful when the arresting officer has "probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). To determine whether probable cause for an arrest existed, the Court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the

standpoint of an objectively reasonable police officer, amount to 'probable cause.'" *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).  The arresting officer's "state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck*, 543 U.S. at 153.  In other words, probable cause is based on objective circumstances, not subjective intentions.  *Id.*  "The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical.'" *United States v. Donahue*, 764 F.3d 293, 302 (3d Cir. 2014) (quoting *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)).  It does not require "an actual showing" of criminal activity, and instead "requires only a probability or substantial chance of criminal activity." *Wesby*, 583 U.S. at 57 (internal quotation marks and citation omitted). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

IV.    **ANALYSIS**

Defendant asserts that the evidence of the firearm and ammunition should be suppressed for two reasons: (1) he was not searched pursuant to a valid warrant exception; and (2) the officers did not have probable cause to search him.  (D.I. 27 at 3, 6).  In response, the Government contends that the evidence should not be suppressed because (1) the officers had probable cause to believe that Wing was violating several Delaware laws; and, in the alternative, (2) the officers had reasonable suspicion to conduct a *Terry* stop and protective frisk.  (D.I. 32 at 5, 10). Ultimately, the Court agrees with the Government.

A.    **The Search Incident to Lawful Arrest Exception Applies**

The Government contends that the evidence should not be suppressed because the search was conducted incident to a lawful arrest.  (D.I. 32 at 5).  Specifically, the Government asserts that the Officers had probable cause to believe that Defendant was committing the following criminal offenses: (1) criminal trespass in the second degree, in violation of 11 Del. C. § 822; (2) disorderly conduct, in violation of 11 Del. C. § 1301; (3) concealed carrying of a deadly weapon

without a license, in violation of 11 Del. C. § 1442; or (4) possessing a firearm while under the influence, in violation of 11 Del. C. § 1460. (*Id.* at 6-9). Defendant counters that the "objective evidence known to officers did not indicate" that any of the crimes had occurred or were occurring. (D.I. 34 at 3). For the reasons explained below, the Court finds that the Officers lacked probable cause to believe that Wing was committing criminal trespass or engaging in disorderly conduct. However, the Court finds that the Officers had probable cause to believe that Wing had violated Delaware law prohibiting the concealed carrying of a deadly weapon without a license.

### 1.    There Was No Probable Cause to Believe Defendant was Committing Criminal Trespass or Engaging in Disorderly Conduct

The Government asserts that the "officers had probable cause to arrest Wing for criminal trespass or disorderly conduct once they saw him asleep in the restaurant after it had closed." (D.I. 32 at 6). The Court disagrees.

Under Delaware law, "a person is guilty of criminal trespass in the second degree when the person *knowingly* enters or remains unlawfully in a building. . .." 11 Del. C. § 822 (emphasis added). A person "enters or remains unlawfully" in a public building, if the person "defies a lawful order not to enter or remain, personally communicated by the owner of the premises or another authorized person." 11 Del. C. § 829(e). Similarly, under Delaware law, "a person is guilty of disorderly conduct when: (1) [t]he person *intentionally* causes public inconvenience, annoyance or alarm to any other person, or creates a risk thereof by: . . . [c]reating a hazardous or physically offensive condition which serves no legitimate purpose." 11 Del. C. § 1301(1)(f) (emphasis added).

Here, the Officers responded to a dispatch call for a person asleep in a closed restaurant. "The dispatcher [did] not advise that there was a refusal to exit the premises, an entry after closing, or a disturbance of any kind." (D.I. 34 at 5). When the Officers arrived at the restaurant, they

saw Defendant asleep in a corner booth.  (Tr. 15:14-24).  The Officers presumed that Defendant had either arrived when the restaurant was open, or that he was let in by the restaurant employees. (Tr. 41:4-12).  In either case, Defendant's entry appeared to be lawful.  The Officers did not speak to the restaurant employees about whether Defendant had woken up after the restaurant had closed or had been told to leave, at any time, by the employees.  (*Id.*; *see also* D.I. 34, Ex. 1). Furthermore, the Officers were not told that Defendant behaved in a disorderly manner before falling asleep.  (Tr. 41:18-19).  In summary, there was no evidence to indicate to a reasonable officer that Defendant may have committed criminal trespass or disorderly conduct under Delaware law.  Instead, all the facts available to the Officers indicated that Defendant had lawfully entered the restaurant while it was open, fell asleep, and then remained asleep until the Officers arrived.

Further, and significantly, "[f]or probable cause to exist, there must be probable cause for all elements of the crime, including *mens rea*."  *Williams v. City of Alexander*, 772 F.3d 1307, 1312 (8th Cir. 2014); *see also Paff v. Kaltenbach*, 204 F.3d 425, 437 (3d Cir. 2000) (Stating that an officer arresting a suspect for criminal trespass must have probable cause as to the *mens rea* element).  The Delaware criminal trespass and disorderly conduct statues each require a specific *mens rea* – knowingly and intentionally, respectively.  11 Del. C. § 822; 11 Del. C. § 1301. However, a person who is asleep lacks *mens rea*.  *See State v. Massey*, 242 Kan. 252, 257 (Kan. 1987) ("There is unquestionably no *mens rea* when one is unconscious.").  A reasonable officer could not conclude, and would not conclude, that Defendant had done anything knowingly or intentionally while asleep.[3]  (*See* D.I. 34 at 7).  Therefore, the Officers lacked probable cause to

---

3    The Officers testified that they believed there was probable cause that Defendant was trespassing.  (Tr. 17:10-11; Tr. 74:2-3).  The Officer's beliefs, however, were untethered from the facts available to them and the requirements of the Delaware trespass statute.

believe that Defendant possessed the requisite *mens rea* for the criminal trespass or disorderly conduct statutes.   As such, the Officers could not have lawfully arrested Defendant for violation of either statute.

### 2.   There Was Probable Cause to Arrest Defendant for the Concealed Carry of a Deadly Weapon Without a License

Next, the Government asserts that the Officers had probable cause to arrest Wing for the concealed carry of a deadly weapon without a license, in violation of 11 Del. C. § 1442.   (D.I. 32 at 8-9).   Defendant responds that the Officers lacked probable cause to arrest him for a firearm offense because the Officers were not aware that Defendant possessed a firearm until after the search had occurred.   (D.I. 34 at 3-4).   Defendant contends that "only [Officer Rennewanz] even claimed to see an object in Mr. Wing's pocket, and he stated he believed it was a flashlight."   (*Id.* at 4).   The Court, however, finds that the Officers had probable cause to believe that Wing was committing a firearm offense prior to the search and, thus, the Officers were permitted to conduct a search incident to a lawful arrest.

Under Delaware law, "[a] person is guilty of carrying a concealed deadly weapon when the person carries concealed a deadly weapon upon or about the person without a license to do so." 11 Del. C. § 1442.   A deadly weapon, including a firearm, is considered to be "concealed" if it is not "visible to an individual who came close enough to see it by ordinary observation." *Brooks v. State*, Case No. 281-2022, 2023 WL 3743109, 2023 Del. LEXIS 169, at *2-*3 (Del. May 31, 2023) (Affirming jury instructions on the definition of "concealed").   "Absolute invisibility is not required." *Id.* at *3.   Additionally, "'licensure' is not an element [of the crime] but rather an

---

The evidence presented to the officers at the restaurant did not indicate that Defendant was committing the crime of trespass, even though the officers were responding to a trespass dispatch. *See Gattling v. West*, 850 Fed. Appx. 91, 95 (2d Cir. 2021) ("A dispatch call may be a factor supporting probable cause if it is 'sufficiently corroborated.'").

affirmative defense." *State v. Murray*, 213 A.3d 571, 584 (Del. 2019) (J., Traynor, dissenting); *see also Upshur v. State*, 420 A.2d 165, 169 (Del. 1980) ("[T]he burden of proving that [the defendant] was legally entitled to carry the deadly weapon (by virtue of a license) [is] on the defendant."). "[T]he existence and validity of an affirmative defense," such as the possession of a license, "does not necessarily negate probable cause to arrest." *Schimandle v. Dekalb Cnty. Sherriff's Off.*, 114 F.4th 648, 659 (7th Cir. 2024); *see also Bracken v. Twp. of Manor*, No. 23-1763, 2024 WL 4210535, 2024 U.S. App. LEXIS 23545, *6, at n.6 (3d Cir. Sept. 17, 2024) ("To the extent that an affirmative defense can ever negate probable cause, the arrestee 'must show facts which support the defense, but also that a reasonable police officer would know of these facts and conclude that [a crime] had not been committed.'") (quoting *Radich v. Goode*, 886 F.2d 1391, 1396 (3d Cir. 1989)).

The facts leading up to the arrest, viewed from the standpoint of an objectively reasonable police officer, amounted to probable cause that Defendant was carrying a concealed weapon without a license, in violation of 11 Del. C. § 1442. When the Officers entered the restaurant, they observed Defendant asleep in the booth. The Officers then approached Defendant. Officer Rennewanz testified that, "from approaching distance," it appeared that a "flashlight" was hanging out of Defendant's front, open jacket pocket.[4]  (Tr. 25:13-15). However, as Officer Rennewanz got closer to Defendant, he was able to identify the object as the backstrap of a pistol. (Tr. 25:15-17; *see also* Tr. 46:8-10 ("When I leaned in closer is when I could see directly down into the pocket, is when I identified it as a firearm.")).[5]  At that moment, the objective facts available to

---

[4]     Officer Rennewanz thought the object was a flashlight because it appeared to have knobs similar to those on a flashlight handle. (Tr. 47:24-48:1).

[5]     Defendant avers that Officer Rennewanz did not believe that the object was a firearm until after he had removed it from Defendant's pocket. The evidence, however, contradicts

Officer Rennewanz were that Defendant was asleep in public and had a partially exposed firearm sticking out of his pocket.[6]  A prudent officer, presented with these circumstances, has a reasonable basis to believe that there is a fair probability that the Defendant is committing a crime – namely, carrying a concealed deadly weapon without a license to do so.  11 Del. C. § 1442; *see State v. Murray*, 213 A.3d 571, 578 (Del. 2019) (explaining that when the officer "immediately found the firearm on [Defendant's] person," "there was clear probable cause to believe that a crime was being committed – carrying a concealed deadly weapon.").

Defendant argues that "[k]nowledge of unlawful possession of the firearm, in advance of the search" was "necessary for the government to claim probable cause to arrest Mr. Wing." (D.I. 34 at 4).  Defendant, however, is incorrect.  Probable cause to arrest does not require knowledge. Probable cause to arrest exists when there is a "fair probability" that the arrestee committed the crime.  *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2015).  Police officers are not required to "correctly resolve conflicting evidence" or conclusively determine guilt or innocent at the scene of an arrest.  *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005).

---

Defendant's assertion.  While under oath, Officer Rennewanz testified that he observed that the object was a firearm before removing it from Defendant's pocket.  Further, Officer Simpler similarly testified that he saw Officer Rennewanz peer into Defendant's pocket before reaching into it and removing the firearm.  (Tr. 60:1-2; 74:9-12; 75:8-10).  The Court finds both Officer Rennewanz and Officer Simpler to be credible.  The Court also finds that Officer Simpler's testimony corroborates Officer Rennewanz's testimony.  The Court also independently reviewed the body camera footage finds that it supports Officer Rennewanz's tesitmony.  (*See* D.I. 34, Ex. 1).  Therefore, the Court concludes that Officer Rennewanz identified the object as a firearm before removing it from Defendant's pocket.

[6]  The Court also notes that Officer Rennewanz was "permitted, and likely expected, to remove the firearm from [Defendant's] pocket."  *United States v. Harris*, 747 F.3d 1013, 1019 (8th Cir. 2014).  Firearms are dangerous and the objective appearance of the firearm, protruding from an open jacket pocket while Defendant was asleep, indicated the Defendant was carelessly handling the firearm in a public location.  *See id.* at 1018.  "Firearms are dangerous and extraordinary dangers sometimes justify unusual precautions."  *Florida v. J.L.*, 529 U.S. 266, 272 (2000).

Likewise, as stated above, Defendant's lawful possession, i.e. licensure, would be an affirmative defense. "While an officer may not deliberately disregard facts known to him which establish an affirmative defense, [the law] do[es] not require him to investigate facts that would help to establish a defense, even if the defense is asserted at the time of arrest." *Mazuka v. Rice Twp. Police Dep't*, 655 Fed. Appx. 892, 900 (3d Cir. 2016) (internal quotation marks, brackets, and citation omitted) (J., Smith, concurring); *see also Wagner v. N Berks Reg'l Police Dep't*, 816 Fed. Appx. 679, 685 (3d Cir. 2020) ("As we have held in other cases, police officers generally have no responsibility to determine the applicability of certain affirmative defenses."). Accordingly, Officer Rennewanz was not required to ask Defendant for proof of a license prior to seizing the firearm and searching Defendant to neutralize the situation.[7]

In summary, Officer Rennewanz saw that Defendant possessed a partially concealed firearm upon approaching Defendant. As soon as Officer Rennewanz saw the partially concealed firearm, he had probable cause to believe that Wing was committing a firearm offense. *See Collins v. Virginia*, 584 U.S. 586, 595 (2018). Once Officer Rennewanz had probable cause to arrest Wing for a firearm offense, Officer Rennewanz was permitted to search Wing incident to the arrest. *See Chimel v. California*, 395 U.S. 752, 762-63 (1969) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resists arrest or effect his escape."). The search is still

---

[7]    Indeed, Officer Rennewanz was "permitted, and likely expected, to remove the firearm from [Defendant's] pocket." *United States v. Harris*, 747 F.3d 1013, 1019 (8th Cir. 2014). The objective appearance of the pistol, protruding from Defendant's open jacket pocket while he was asleep, indicated the Defendant was carelessly handling the firearm in a public location. *See id.* at 1018. "Firearms are dangerous and extraordinary dangers sometimes justify unusual precautions." *Florida v. J.L.*, 529 U.S. 266, 272 (2000).

permissible "even if the search of the evidence came slightly before the arrest itself."[8]  *Drake v. United States*, 315 A.3d 1196, 1206 (D.C. Cir. 2024); *see also United States v. Naim Nafis Shakir*, 616 F.3d 315, 321 (3d Cir. 2010) (stating that the search incident to arrest standard "remains a lenient standard" where there is more than a "theoretical possibility" that the suspect may access a weapon).  As such, the search of Defendant did not offend the Fourth Amendment.

### 3.    The Court Need Not Address Other Exceptions to the Warrant Requirement

Additionally, the Government argues that there was probable cause to arrest Defendant for possessing a firearm while under the influence, in violation of 11 Del. C. § 1460.  The Court, however, need not address this argument because the existence of probable cause for one offense justifies the arrest, even if there was insufficient cause to arrest on other suspected offenses. *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007); *see also Edwards v. Philadelphia*, 860 F.2d 568, 576 (3d Cir. 1988).  The Government also, in the alternative, argues that the Officers possessed reasonable suspicion to conduct a *Terry* stop and frisk, which does not require a warrant. Although the Court agrees with this assertion,[9] the Court need not address the argument fully because it determines that the search was conducted incident to a lawful arrest.

---

[8]   To be clear, an officer may not conduct a search unless there is pre-existing probable cause for the arrest.  Phrased differently, the Government may not conduct a search, find evidence from that search, and then retroactively use the evidence found to support an initial finding of probable cause for the search.  In contrast, like here, if the Government has probable cause to arrest a suspect prior to the search, the Government may search the suspect before placing them in handcuffs or reciting their *Miranda* rights.  Such a search is "considered incident to arrest even though it occurred immediately before the arrest because the agents had probable cause to arrest [the suspect] prior to the search." *United States v. Johnson*, Case No. 92-5740, 1993 U.S. App. LEXIS 11753, at *5 (4th Cir. Mar. 5, 1993).

[9]   In order to conduct a lawful *Terry* stop, the officer must have reasonable suspicion that "criminal activity may be afoot and that the person[ ] with whom he is dealing may be armed and presently dangerous." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  "Reasonable suspicion is a less demanding standard than probable cause." *Alabama v. White*, 496 U.S.

## V.    **CONCLUSION**

For the reasons explained above, the Court denies Defendant's Motion to Suppress (D.I. 27). The Court will enter an Order consistent with the ruling contained in this Memorandum Opinion.

---

325, 330 (1990). Thus, "the level of suspicion necessary to justify a *Terry* stop is somewhat lower and can be established with information that is different in quantity or content than that required for probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). Whereas here, an officer observes a partially concealed weapon on a person who is asleep in a closed restaurant, the officer has sufficient reasonable suspicion to conduct a *Terry* stop and frisk. *See United States v. Leake*, Case No. 07-655 (PGS), 2009 WL 482372, 2009 U.S. Dist. LEXIS 14631, at *11 (D.N.J. Jan. 23, 2009) ("Once the officers approached and saw the firearm in Defendant's hand, they had, at the very least, a reasonable and articulable suspicion sufficient to perform a *Terry* stop."); *see also United States v. Bontemps*, 977 F.3d 909, 916 (9th Cir. 2020) (holding that police had reasonable suspicion to conduct a *Terry* stop where they observed a bulge under a man's sweatshirt appearing to be a firearm) ( "A rule that always required more than a suggestive bulge, or that required the concealed weapon to be revealed, would run counter to *Terry*'s fact-based standard and pose obvious safety concerns.")).